## Case No. 11,434.

### The PRINCETON.

[3 Blatchf. 54;[1] 12 N. Y. Leg. Obs. 5.]

Circuit Court, S. D. New York. Sept. 30, 1853.[2]

TOWAGE — SKILL AND DILIGENCE — EXEMPTION IN CONTRACT.

1. Under a contract to tow "at the risk of the master and owners" of the tow, a tug is responsible only for the exercise of ordinary skill and diligence in her navigation.
[Cited in Brown v. Clegg, 63 Pa. St. 56.]

2. Such a contract does not contain a stipulation for negligence.

3. Whether a contract stipulating for the exemption of the tug from proper and reasonable care and skill in navigation, would be lawful, quere.
[Cited in The Jonty Jenks, 54 Fed. 1,023.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court against the steam-tug Princeton, to recover the value of a cargo of coal which was lost by the sinking of a canal-boat on which it was laden. The canal-boat was towed by the tug from the Raritan river, in New Jersey, to the port of New York, under the following order, signed by the agent of the claimants: "December 10th, 1847. To the Captains of the Steam Towboats of the Delaware and Raritan Canal and the Camden and Amboy Railroad and Transportation Companies: Take in tow canal-boat No. 350, Carroll, master, and tow the same from Philadelphia to New York and back again, at the risk of the master and owners, they paying the steam-towing." On this order, the master of the canal-boat endorsed the following agreement: "I agree to have the within named boat towed according to the terms specified within. [Patrick Carroll, Master.]" The court below dismissed the libel [Case No. 11,433a], and the libellant appealed to this court.

[The Princeton arrived at pier No. 2 North river, where she left some of the boats in her

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
2 [Affirming Case No. 11,433a.]

tow, and started from thence with a barge lashed on her larboard side, and the scow of coal in question lashed outside the barge, to convey them to Rutger's slip in the East river; and, as we have said, as the tow entered the tide, which was then strong ebb, the scow was submerged and went to the bottom. There were three hands on board the scow at the time of the accident, and they concur in attributing the loss of the scow and cargo to the speed of the Princeton, at the time the scow struck the tide between Whitehall and Governor's Island; and also that they called repeatedly to the captain and hands on the tug, warning them of the danger, without receiving any answer or slackening their speed; there were four persons on board the tug at the time, and two on board of the barge in tow, all of whom concur in stating that the Princeton was slowed before entering the tide, and had nearly lost her headway, and attribute the accident to the circumstances that the scow was heavily laden, and had been in a very leaky condition from the time she was taken in tow on the Raritan river. There was a captain of a tow boat lying at pier No. 3 East river, who saw the Princeton coming round into the tide, and thinks she was moving at the rate of four knots an hour, but did not notice her slackening as she entered it till the scow went down. The preponderance of the evidence, I think, is in favor of the statement of the hands of the Princeton. The master of the barge who had no interest in the controversy, and was in a situation that afforded every opportunity to observe her speed, confirms in every material particular the hands on board the Princeton, as does also the steward.][3]

Dennis McMahon and Washington Q. Morton, for libellant.

Cambridge Livingston, for claimants.

NELSON, Circuit Justice. Under the contract in this case, the tug is responsible only for the exercise of ordinary skill and diligence in her navigation—such care and diligence as a prudent man would exercise, under like circumstances, in regard to his own affairs. In other words, the tug is liable for negligence, by which I mean the absence of ordinary and reasonable care and attention in her navigation. It is urged by the claimants, that, under this contract, she can be made liable only in case of gross negligence. It is somewhat difficult, however, to understand exactly what is meant by this expression in the law, unless, as has been said by an eminent English judge, in a recent case, it means little, if anything, more than negligence with an epithet. The absence of ordinary care and attention may be, under certain circumstances, gross negligence. But, in determining the rights of the parties to this suit, I do not enter into the supposed distinction between the different degrees of negligence, as the contract in this case does not, in my judgment, contain a stipulation for negligence at all. Whether any such contract can be upheld upon any sound principle of law, will be determined when the question arises. It does not arise here. Some express and positive stipulation to that effect will be required, before it can be presented for consideration. An agreement to be towed "at the risk of the master and owners" of the tow, does not exempt the tug from proper and reasonable care and skill in her navigation.

The tug had a barge lashed to her larboard side, and the canal-boat in question was lashed outside of the barge. As the vessels entered the tide in the East river, which was strongly ebb, the tow was submerged and sank. The preponderance of the evidence is, that the speed of the tug was slackened and she had nearly lost her headway, before she entered the tide, and that the accident was attributable to the tow's being heavily laden, and having been in a leaky condition from the time that she was taken in tow in the Raritan river. Some evidence has been given to show that the tug was in fault in not entering the tide head on, instead of entering it, as she did, somewhat obliquely, as she rounded into it. The master of the tug states that, when he entered the tide, it was a little on his larboard bow; that he has tried various ways at different times; and that he thinks that the safest course. There are different opinions on the subject. All the evidence impeaching the conduct of the tug, is, however, slight and unsatisfactory. The burthen of establishing the want of ordinary skill and diligence on the part of the tug at the time of the disaster rests on the libellant, and, as the preponderance of the evidence is the other way, the decree of the court below must be affirmed.