## Case No. 7,190.

### The JAMES A. WRIGHT.

[3 Ben. 248.] [1]

District Court, S. D. New York. May, 1869.[2]

W. R. Beebe, for libellants.
D. McMahon, for claimants.

BLATCHFORD, District Judge. These were two libels filed. the first one by the owner of the barge Arctic, and the second one by the owners of a cargo of coal on board of her, to recover damages for the loss of the barge and her cargo, in consequence of her having been cut through by ice in the Hudson river, in the gorge just above West Point, and sunk, about dusk on the evening of the 27th of December, 1867, while in tow of the steam-tug James A. Wright, from Newburgh bound to New York. The libels allege that the barge was taken in tow without authority, and after those in charge of the tug had been forbidden to take her, and that the loss occurred through the fault, negligence and want of care of those in charge of the tug. The defence set up in the answers is, that the towing was authorized by one Dodge, as master of the barge, and in command of her, and exercising control over her navigation; that Dodge agreed to take the risk of the ice; that the barge, on the voyage, sprung a leak by striking ice, and sank because she did not have a proper pump; and that the loss did not happen through fault, negli-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 7,191.]

gence and want of care of those on the tug. This defence is sought to be made out principally by the deposition of Dodge, which has been taken on the part of the claimants, but, instead of aiding the defence, it satisfactorily establishes the case on the part of the libellants. The barge was taken in tow, at Newburgh, during the afternoon of the 27th of December. Dodge testifies that he was discharged as master on the 24th of December, and was then notified that the barge was put in charge of one Wanzer, at Newburgh; that, after he was discharged, but on the same day, he was told by the owners of the cargo, who were the agents of the owner of the barge, to bring the barge and her load of coal to New York, if he got a chance; that the master of the tug told him, before they started, that there was ice in the river below, and that it was not safe to take the boat down; that he told the master of the tug that he would take the risk of the ice himself; that, when the barge was about to be taken in tow, he heard the master of the tug and his men forbidden, by a person on the dock, at Newburgh, to move her; that she had a pump which was in good order; that the ice was choked up at West Point, and could be seen ahead before it was reached, there being no open passage through it; and that, after the barge was cut through by the ice, he pumped with the pump until he found she could not be saved. It appears, by other testimony, that Wanzer, on seeing the barge being hauled out to be towed, caused the master of the tug to be told that he must not take the barge with him, as Dodge had no authority. Upon this, the master of the tug at first refused to tow the barge, but. at length, he proposed to Dodge to run the risk, and Dodge said he would take the risk, and then the barge was taken in tow. At the most, therefore, Dodge had authority only to bring the barge and her cargo to New York. He had no authority to have a hole cut in the barge by the ice, and to deposit her and her cargo at the bottom of the river. instead of landing her at New York safely; and he had no authority, on behalf of the libellants, to take for them the risk of going into and through the ice choked up at West Point, at a time when the master of the tug expressly told him that it was not safe to take the boat down. The tug, taking the barge in tow, under the circumstances above stated. took all the risk of her safe towage, and it was negligence on the part of the tug to drag the barge into the choked ice, so that she could be and was cut through and sunk. There must be decrees for libellants, in both cases, with costs, with references to compute the damages.