## THE PACKER.[1]

### CASTLE v. THE PACKER.

*(Circuit Court, S. D. New York.   July 10, 1886.)*

1. TOWAGE—DIFFICULTIES OF NAVIGATION—NEGLIGENCE—TEST OF.
    When both tug and tow enter upon the undertaking with full knowledge of the risk of navigation by reason of ice, and the tow is subsequently injured thereby, negligence is not to be imputed to the tug because it appears, after the event, that the accident might not have happened if something had been done which was omitted.   The tug is not to be held responsible for a mere mistake of judgment; neither is she to be absolved from the exercise of reasonable care to avoid unnecessary hazard because the master of the tow promised to take the risk.   The test is whether or not the master of the tug did all that another prudent and intelligent man would have ordinarily deemed it necessary to do under the same circumstances.

2. SAME—LIABILITY OF TUG FOR NEGLIGENCE.
    A tug cannot be charged with negligence for a mere mistake of judgment. The test is whether the course of her master is in accord with that which other prudent and intelligent men would have ordinarily deemed necessary under similar circumstances.

Appeal from district court, Southern district of New York.   Reported 22 Fed. Rep. 668.

Libel *in rem*, by the master of the canal-boat against a tug, for negligent towage.   The service was undertaken by the respondent with some reluctance in consequence of danger from the ice.   The libelant undertook to assume the risk, provided the tug would obey his directions.   The district court decreed against the tug, on the ground that the master of the tug should have broken a passage through the ice before entering it with the tow, but adjudged that the damages should be apportioned because the master of the canal-boat concurred in the hazard.

*Edward D. McCarthy,* for claimant and appellant.

*Hyland & Zabriskie,* for libelant and appellant.

WALLACE, J.   On the eighth day of February, 1883, the tug Packer undertook to tow the libelant's canal-boat, the Enterprise, from Elizabethport to Newark, in order to enable the Enterprise to complete a voyage to Newark from Cheesequake creek.   The Enterprise had made a towage contract for the whole voyage from Cheesequake creek with the owners of the line of tugs of which the Parker was one, and under that contract she had been towed by the Mary Ann, another tug of the line, to Elizabethport, on the ninth day of January preceding, when her voyage was interrupted by the ice in Newark bay, and she was left at Elizabethport.   The master of the Enterprise became impatient at the delay, and solicited the agent of the owners of the line of tug-boats to procure him a tug and proceed to

[1] Reported by Theodore M. Etting, Esa. of the Philadelphia bar.

Newark. Although the agent was reluctant to undertake the voyage, fearing danger to the canal-boat from the ice, he yielded to the solicitations of the master of the Enterprise, and directed the Packer to undertake the service. The master of the Enterprise was an experienced navigator, and was fully aware that the attempt involved risk of injury to his boat from the ice, and promised to take the hazard if the master of the tug would obey his directions. It was under these circumstances that the tug undertook the towage service.

The tug lashed the canal-boat along-side, and started up the channel of the bay. The day was bright and clear, the tide was flood, and no ice upon the bay was in sight when the boat started. The boats proceeded past the bridge of the New Jersey Central Railroad Company, which extends across the bay a short distance above Elizabethport, and kept on, in unobstructed water, for something over two miles, when ice became visible at the lower part of the dike in the Passaic river. The canal-boat was then taken from along-side and fastened by a short hawser to the stern of the tug, and the boats proceeded until they encountered the ice, which extended some distance below the dike. After going a short distance into the ice they were unable to proceed further, and waited for an hour or two for the tide to turn ebb, in the expectation that the ebb-tide would carry the ice from the dike into the bay, and open a channel for the passage of the boats. Finally danger was apprehended from the broken cakes of ice which were passing along the sides of the boat. The canal-boat was an old boat, and had already received slight injuries from the broken ice. Her master and the master of the Packer both concluded it was unwise to attempt to proceed, and that it was safer to return to Elizabethport. The boats were accordingly turned about. They proceeded on their return until within about half a mile of the bridge, without any obstruction, when it was observed that a large field of ice, upwards of half a mile in breadth and length, had drifted from the west shore of the channel, and was obstructing the passage through the channel to the bridge. This ice had drifted off the meadows, and was being carried by the ebb-tide towards the bridge. The boats were obliged to pass through this ice in order to reach the draw at the bridge before the channel at that place should be choked up by the ice. It could not be passed on either side. It was apparently a thin sheet of newly-formed ice, and proved to be about two inches in thickness. The master of the tug deemed it more prudent to attempt to break through this ice than to wait until it floated down and choked up the channel, and be exposed, in the mean time, to the danger of floating ice that might be brought upon the boats by the ebb-tide from the channel above. He therefore entered the ice very slowly, and proceeded until the boats got about a couple of hundred feet, when it was found that the ice had cut a hole in the starboard bow of the canal-boat. The canal-boat was then taken out, and beached in shallow water on the meadows. The canal-boat was sev-

·eral feet narrower than the tug, and, at the time of the injury, was being towed directly behind the tug by an eight-foot hawser. Whether she was cut by pieces of broken ice, or by contact with the unbroken ice upon her starboard side, does not appear. The master of the canal-boat gave no directions to those in charge of the tug after the boats started on their return to Elizabethport.

The district court decreed against the tug for the damages to the canal-boat and her cargo by reason of the injury thus sustained, upon the ground that the master of the tug should have broken a passage through the ice before entering it with his tow, but adjudged that the loss should be apportioned because the master of the canal-boat concurred in attempting to make Newark from Elizabethport when the navigation was hazardous. Both parties have appealed.

I am unable to concur in the view of the case adopted by the learned judge of the district court, and am led to the conclusion that the misfortune should rest on the libelant, as one within the risks assumed by the master of the canal-boat when the service of the tug commenced, instead of being one attributable to the negligence of the tug. The tug is not to be held responsible in damages for a mere mistake of judgment on the part of those in charge. Neither is she to be absolved from the duty of exercising reasonable care to avoid unnecessary hazard because the master of the tow promised to take the risk of danger from the ice. *The Syracuse,* 6 Blatchf. 2. Both contracting parties understood that the towage service was to be performed under circumstances of peculiar peril, in which a mistake of judgment was not improbable, and that the liability of such an error was one of the incidents of the risk. Ordinarily, the burden of proof in actions for negligent towage is on the libelant, (*The Princeton,* 3 Blatchf. 54;) but when the case discloses, as it does here, that the towage service miscarried because the immediate peril was encountered which both parties deemed imminent, the presumption of negligence on the part of the tug is materially weakened. Under such circumstances it is not unreasonable to require the party who imputes fault to the other to locate the fault with precision. The libelant has failed to do this in the present case.

The libel itself indicates quite persuasively that the libelant was unable to propound any well-defined theory of negligence on the part of the tug. Its allegations are generalities, palpably framed to meet any possible hypothesis of negligence to which the proofs might lend color. The libel asserts—*First,* that the tug was in fault by reason of her delay, to-wit, in leaving her tow nearly a month at Elizabethport before attempting to proceed; *secondly,* that she was in fault because, after having attempted to proceed, she ought not to have attempted to turn back with her tow to Elizabethport; and, *thirdly,* that she was in fault "in running libelant's boat, after having turned back, into a large cake or field of ice, which she could have avoided had she stopped or turned to the one side or the other." The proofs are des-

titute of any support for the first two allegations of fault; and such was the opinion of the district judge. As to the third allegation of fault, it suffices to say that it was not found to be true by the district judge; that the proofs on the part of the libelant to support it are extremely vague and weak; and that it is overthrown, not only by the evidence of all the witnesses for the claimant, but also by all the probabilities of the case. The tug was accompanied on the trip by the agent for the owners; and it is apparent that both he and the master of the tug were extremely solicitous for the safety of the tow, and would have eagerly adopted an opportunity of avoiding the ice. If they were negligent at all, it was because they failed to adopt the precaution which the district judge was of opinion should have been taken. Ought they to have detached the tow, and broken up the ice with the tug, before attempting to pass through it? It would seem that the libel would have assigned this omission as a fault if the facts of the case had been deemed such as to justify the allegation. The master of the tow, the husband of the libelant, when examined as a witness, was asked to state what fault he thought was committed by the tug. The questions and his answers are these:

"*Question.* What blame do you bring against her? What did she do wrong after she turned around? *Answer.* Towed me too fast. *Q.* How did that bring you into trouble? *A.* Well, towed us through the ice so fast that it stove a hole in our boat. *Q.* Your opinion is that she wouldn't have stove a hole in you if she hadn't towed so fast? *A.* Yes, sir."

This testimony indicates sufficiently that the master of the canal-boat did not suppose the ice to be so thick as to endanger his boat if reasonable care had been exercised in going through it. His complaint is that he was towed too fast; but the proofs are satisfactory that the tug was proceeding slowly under one bell. No expert has testified that prudent navigation required the tug to break the ice in advance. As has been already stated, the proofs leave it in doubt whether the injury to the boat was not caused by the broken pieces of ice made by the tug. It is certainly purely a matter of conjecture whether, if the ice had been broken up by the tug, the tow could have been safely carried through it.

Those in charge of the tug doubtless assumed that the ice was not so thick as to unnecessarily endanger the tow if she was slowly and carefully towed. They probably supposed that she would be protected by the greater width of the tug, and that when attached by so short a hawser, although she could not be held entirely steady, but would be liable to swing somewhat to either side of the tug, she could be carried through with no greater hazard than was to be apprehended under any circumstances to a tow of her age and weakness. This was the judgment of experienced navigators, formed on the spot, and in view of all the surrounding circumstances. It is significant that the master of the tow did not dissent, or offer any suggestion of precautionary measures if he did not approve of the attempt. The fact

would seem to be that all concerned acted upon their best judgment at the time, knowing that there was danger whatever course they might adopt, but deeming it wiser, upon the whole, to proceed in the manner they did, than to take the chances which a delay might engender. It may be that, if the ice had been broken by the tug before she entered it with her tow, the latter might have escaped injury. But the tug is not to be held liable upon conjecture, nor is negligence to be imputed to those in charge merely because it appears, after the event, that the accident might not have happened if something had been done which was omitted. The question is whether they did all that other prudent and intelligent men would have ordinarily deemed it necessary to do under the same circumstances. Upon the proof this question should be answered in the affirmative.

The libel is dismissed, with costs of this court and of the district court.