## THE JONTY JENKS.

(District Court, N. D. New York. March 16, 1893.)

1. TOWAGE—LIABILITY OF TUG FOR NEGLIGENCE—CONTRACT EXEMPTION.
   A stipulation in a towage contract that the tow shall assume all the responsibility does not relieve the tug from liability for damages caused by want of reasonable care and skill in navigation.

2. SAME—NEGLIGENCE OF TUG—WHAT CONSTITUTES.
   A tug, with a canal boat lashed to her port side, while passing out of the Albany canal basin into the Hudson river ran the boat upon a dilapidated pier at the upper side of the opening into the river. At the time there was a freshet, but another boat had been safely towed through by the tug shortly before. There were 40 feet of water between the tug and the lower pier, and passing through the middle of the cut there would have been 20 feet of clear water on either side. *Held*, that the tug was in fault.

3. SAME—ABSENCE OF HELMSMAN.
   The canal boat also was in fault in failing to have the helmsman at his post, he having been told how to steer, and instructed that the boat could not be properly handled without him, and it appearing that, if at his post, he might have prevented or lessened the injury.

4. SAME—NEGLIGENCE OF TOW.
   The fact that a canal boat is old, there being no sufficient proof that she is unseaworthy, does not relieve a tug from liability for negligently running her against a pier.

In Admiralty. Libel by the owner of the canal boat J. A. Fassett against the steam tug Jonty Jenks to recover for damages occasioned by careless towing. Decree for half damages and costs to the canal boat.

J. A. Hyland, for libelant.
W. Frothingham, for claimant.

COXE, District Judge. The libelant, as owner of the canal boat J. A. Fassett, brings this action against the steam tug Jonty Jenks to recover for damages to the canal boat occasioned by the careless towing of the tug. On the 4th of November, 1889, the canal boat loaded with lumber was lying at the Albany basin lock. The tug undertook to tow her to a point below the lower railroad bridge at Albany, about a mile below the lock. In order to reach the Hudson river from the Erie canal it is necessary to pass through the upper end of the Albany basin and out between two piers, which are about 70 feet apart. The tug having lashed the canal boat to her port side started on her journey, but in passing through the cut she ran the port bow of the canal boat upon the south end of the northwest pier, causing the injury complained of. The pier or dock at the place of collision has been allowed to go to decay and is in a dilapidated condition. The situation can be fully appreciated by an examination of the following diagram:

It is unnecessary to determine whether or not the towage service was undertaken upon the express agreement that the owner of the canal boat should assume the entire responsibility, for such an agreement if made would not exempt the tug from proper and reasonable skill and care in her navigation. The Princeton, 3 Blatchf. 54; The Syracuse, 6 Blatchf. 2; The Brooklyn, 2 Ben. 547. The task undertaken by the Jenks was not a difficult one. Notwithstanding the fact that there was a freshet at the time the exercise of ordinary care would have enabled her to accomplish it successfully. Indeed, the companion boat of the Fassett had been safely towed out by the Jenks only a short time before. The space between the piers was over twice the combined width of the tug and canal boat and the court is of the opinion that it was unskillful seamanship to run the canal boat upon the stones of the upper pier when there was 40 feet of water between the tug and the lower pier. If the tug had kept the middle of the cut there would have been 20 feet of clear water on either side. Failure to do this was negligence. The Lady Pike, 21 Wall. 1.

The canal boat is charged with negligence—First, because she was improperly loaded; second, because she was old; and, third, because the helmsman was not at his post.

It is thought that there is a failure to prove that the improper loading, assuming the fact to exist, contributed to the accident.

Regarding the unseaworthiness of the boat, the testimony of the man who repaired her is to the effect that her timbers were sound. She had come from Buffalo with entire safety and there is insufficient evidence to charge her with being unseaworthy. Tugs are not privileged to run canal boats onto rocks because they are old.

As to the other point—the negligence of the helmsman—the testimony, though not entirely clear, is much more satisfactory. The weight of evidence establishes the proposition that he was absent from his post at the time when he might have prevented the accident, or, at least, lessened the force of the blow. He was given to understand that the boat could not be successfully maneuvered without his co-operation, and explicit instructions as to how he should handle his helm were given him. The master of the tug testified as follows:

"Question. Did you see the boat roll? Answer. The boat rolled and came over to me. Q. About how long before this happened was it that you gave the order to put the helm astarboard? A. I could not say; it was only a short time. Q. Immediately afterwards did you see this man who had been at the stick? A. Yes, sir; I saw him right abreast of my pilot house, opposite the pilot house windows, very near the middle of the boat. Q. So that the helm was unattended? A. Yes, sir. Q. Could you at that time steer your boat and tow without the aid of the helmsman? A. No, sir."

Another witness whose duty it was to convey the orders of the master of the tug to the helmsman of the canal boat testified as follows:

"Question. What were the instructions you had received from the captain? Answer. To tell the man at the helm to shift his stick, so when I attempted to give him the signal there was no one there. Q. No one at the helm at all?

A. No, sir. . Q. Where were you? A. I was standing about amidships of the canal boat. Q. Where was the helmsman when you turned to give the signal? A. He was standing about three feet away from me. Q. What was the signal? A. It was to shift the helm to port so as to go to starboard."

It is true that this testimony is somewhat indefinite as to time, but it is impossible to interpret it any other way than that the helmsman was absent when he should have been at the post of duty. This fault must be imputed to the canal boat.

It follows that the canal boat is entitled to a decree for half damages and costs and a reference to compute the amount due.