### THE R. G. TOWNSEND.

#### THE S. L. CROSBY.

##### (District Court, S. D. New York. June 6, 1905.)

TOWAGE—NEGLIGENCE OF TUG—INJURY OF TOW BY ICE.

Respondent tugs at different times towed libelant's canal boat across New York Harbor in the night, placing her alongside and pushing her ahead of the tugs, and on both occasions she was seriously injured by floating ice. She was round at the bow and without stem, and therefore particularly susceptible to injury from ice, and the master on both occasions stated to the masters of the tugs that he did not wish to be towed if there was such danger, and was assured that there was no ice. *Held*, that the tugs assumed the risk from such danger, which was increased by their manner of towing, and were liable for the injury.

In Admiralty. Suits against tugs for injuries to tow.

James J. Macklin, for libellant.
Benedict & Benedict, for claimant.

ADAMS, District Judge. The first of the above entitled actions was brought by Abram F. Burke against the steamtug R. G. Townsend, to recover the damages alleged to have been sustained through injury received by his canal boat, the Gertie Theall, on or about the 20th of January, 1903, through contact with ice, while in tow of the Townsend from Gowanus, Brooklyn, to Guttenberg, New Jersey. The second of the actions was brought by the libellant against the steamtug S. L. Crosby, to recover the damages alleged to have been sustained through injury to the same boat on or about the 21st day of February, 1903, through the same cause, while in tow of the Crosby from Guttenberg to Harrison Street, Brooklyn. The actions were tried together and, as practically the same issue is presented, they can be disposed of in the same way.

The Theall was what is known as a Tonawanda boat, having a round bow, without stem, and particularly susceptible to injury from ice unless very carefully towed. This was well known to the master and he enquired particularly before starting what ice was liable to be met with on the trips and notified the master of the tug in each case that he did not wish to be towed if there was such danger. Each master informed him that there was no danger and he then consented to go. No special precautions were taken by the tug in either case but the Theall was placed alongside of and ahead of the tug. In both cases, ice of some weight was met with, with the result of several planks of the bow being crushed in and the boat thereby put in a sinking condition.

I was impressed with the truth of the accounts given in behalf of the libellant and at the conclusion of the trial, announced that he should succeed, but allowed the claimant to present the cases anew and they have now been submitted on briefs.

The claimant has taken great pains to argue the matter very fully and ingeniously and to cite many cases, which it is not necessary to allude to as I cannot agree with its theory of the facts. The contentions are that the starts were voluntary and the boat's master must have known that ice would be met with; that the tow was made up in the customary and, considering all kinds of navigation, in the safest way; that the speed of the tugs was slow and every precaution taken with respect to lookouts; that the night in one case was moonlight and the other dark, but no ice was observed by the tug though it is not disputed that the boat was injured by the ice.

Taking into consideration the kind of the boat that was to be towed and the notice given by the master in each case, it seems to me that the negligence of the tugs is obvious. The boat was quite unfit to be pushed through heavy ice and that fact was or should have been known to the masters of the tugs. It is not a case like The Packer (C. C.) 28 Fed. 156, where it was held that both tug and tow entered upon the towing with full knowledge of the risk of navigation by reason of ice and that the injury to the tow resulted from a mere mistake of judgment upon the part of the tug, for which she was not responsible. Here, the parties had not equal means of knowing the dangers to be encountered. The tug knew, or should have known, that ice would be met with which would be dangerous to a boat of this character, though not so to others differently and more substantially built, and when the tugs took her, notwithstanding the master's notifications that he did not wish to go if ice were to be met with, and put her, for the tugs' convenience alongside when a safer place would have been astern, it seems to me that the tugs assumed the risk and the results should be deemed the consequences of negligent towage.

My attention has been called to the case of the steamtug W. E. Gladwish, not reported, which appears to be in point:

There the allegations of fault were:

"(1) In towing said boat so that her bow projected ahead of the bow of the said boat 'Fox,' as well as the bow of said tug;

(2) In having both boats on the port side of said tug.

(3) In not towing the said boats astern instead of alongside on short hawsers as is customary and usual in towing through ice.

(4) In towing two boats at the one time through the said ice.

(5) In towing the said boat at all through the said ice.

(6) In towing her so as to bring her in contact with heavy cakes and a large field of ice.

(7) In towing the said boat into and through the ice negligently and at too great a rate of speed."

Judge Brown's decision, endorsed upon the libel, was as follows:

"I find (1) the canal boat was a good sound boat of her class; but she had a very blunt bow and no stem, & was utterly unsuited to butt the ice. (2) That deft. was guilty of negligence & fault in putting such a boat ahead of others to run into ice, instead of putting the Gladwish or the Fox ahead, each

of which had a cutting stem. (3) That deft. ran into such ice as was met, a large cake, at improper speed. (4) Lib. was in no fault.

Decree for libellant.

Ap 27/96."

The question of speed does not enter seriously into this case. According to the tugs' testimony, and there is nothing to overcome it, they were going very slowly. Assuming that the tugs were proceeding, as they claim, when going through the ice, yet the fact remains that the bows of the towed boats were broken in by the contact. If the speed was as described, it tends to show that the boat was unfit to be towed in ice, as the master in substance notified the tugs. In any event, she should not have been placed alongside and pushed ahead of the tugs. If the tugs had gone ahead and the accident still have happened, the question of the seaworthiness of the boat for navigation in New York Harbor in the winter time, would have been presented and an apportionment might have been reached, but taking the good condition of the boat for ordinary purposes and the method of towing into consideration, I feel constrained to hold that the tugs were solely liable for the losses. See, also, The Rambler (D. C.) 66 Fed. 356.

Decrees for the libellant, with orders of reference.