### THE PHŒNIX.

#### (District Court, S. D. New York. October 14, 1905.)

TOWAGE—NEGLIGENCE IN STARTING WITH BARGE IN ICE—MUTUAL FAULT.

A tug *held* chargeable with negligence in starting to tow, on a hawser, a blunt-bowed sternless barge heavily loaded with sand, out of a harbor through a channel cut in the ice and filled with floating ice, where there was obvious danger of injury to the barge because of her shape and the fact that she was wider than the tug, and liable for one-half the loss by the sinking of the barge and cargo from contact with the ice; the barge being also in fault for assenting to the towing.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Towage, § 21.]

In Admiralty. Suit against tug to recover for sinking of tow by floating ice.

James J. Macklin, for libelant.

John F. Foley and Howard S. Harrington, for claimant.

ADAMS, District Judge. This action was brought by the J. B. King Transportation Company, the owner of barge No. 6, to recover the damages sustained by the barge, and her cargo of about 800 tons of

sand, from sinking through contact with ice while being towed by the steamtug Phœnix out of the harbor of Hempstead, Long Island, bound to Staten Island, on the night of the 6th of February, 1904.

The libelant alleges negligence in towing the barge through the ice in the harbor when starting on the voyage, contending it was negligent to tow at all in such darkness as prevailed that night and in continuing on at a high rate of speed in too narrow a channel. The claimant denied any negligence and alleged unseaworthiness but has since withdrawn the charge in the latter respect and it simply remains to determine whether there were any circumstances to indicate fault in the towing so far as it progressed.

The barge was scow shaped and about 27 feet wide. On that night the harbor was completely frozen over but a channel had been cut through earlier in the day by another tug, leaving a space of 35 to 40 feet wide running from the wharf, where the boat was loaded, to the open channel. The boat had been towed light through this channel in the afternoon of the same day and no injury received by her from the broken ice, with which the channel was filled. She was then loaded, so that she was drawing about 15 inches, by the libelant, her loading being completed late the same night. About 11:15 o' clock the tug was notified that the boat was ready to proceed. She was then taken on a short hawser, so that there were 45 or 50 feet between the tug and the barge, and the towage commenced, the tug proceeding at less than half speed, so slowly that about 40 minutes were occupied in covering a distance of about a mile or a mile and a half. Such undisputed fact precludes any further attention being given to the question of excessive speed and it only leaves for consideration whether there was any lack of proper precaution on the part of the tug in starting or in the method of towing. The existence of darkness does not seem to be a factor in the case, and no legitimate fault can be found with the manner of towing.

It was not clearly apparent that there would be any great danger in attempting the voyage to an ordinary sound boat carefully towed on a hawser, but there can be no question in this case about the risk. The master of the tug said, what is obvious to anyone, that there is always danger in going through ice. This is especially so to a stemless round-bowed boat, as was the case here.

The boat had withstood contacts with the ice in entering the harbor but that was no reliable indication that when loaded, she would go out safely, as in fact she did not, because after proceeding a short distance, a considerable hole was made in her bow by the ice, which resulted in her sinking.

The construction of the barge was such that she was unfit to be towed in the ice, as the master testified he notified the tug's master. This was denied by the latter and it is not easy to determine where the truth lies, but in any event, it was sufficiently obvious to any careful person, that the towage would be at great risk of injury to the barge on account of her form and the heavy ice she would have to be taken through. It is true that the tug's master placed the boat behind the tug, in the expectation that the latter would receive the brunt of the

contacts and shield the barge from injury but the tug was not as wide as the barge and could not adequately protect her, as the result showed, especially as she sheered 5 or 6 feet outside of the tug.

The claimant cites The Packer (C. C.) 28 Fed. 156. That was a case of towing in ice and the tug exonerated in a careful opinion by Judge Wallace, but peculiar circumstances existed there. It is stated in the opinion, that the voyage of the boat was interrupted by ice and the master became impatient, soliciting the agent of the Packer's line to procure him a tug and proceed. This agent was reluctant to do, fearing danger, but he yielded to the urging of the master and directed the Packer to undertake the service. It appears that the master was experienced and fully aware that the attempt involved risk to his boat, which risk he promised to assume. Of course it was said that such assumption would not relieve the tug from the effect of its negligence but it was held that the tug was not liable because the master did everything that a prudent and intelligent navigator would ordinarily have deemed necessary and the tug could not be held for the master's mere mistake of judgment. The circumstances here were different. It was obvious that the risk would be encountered from the start. There was no chance, as in The Packer, of escaping the ice and they here pushed right into it with the disastrous result. I can not regard the tug's proceeding as anything but negligent. Simply towing in ice has been held to impose liability upon the tug in several cases. The Tugboat James A. Wright, 3 Ben. 248, Fed. Cas. No. 7,190, by Blatchford, J.; The Steamtug U. S. Grant, 7 Ben. 337, Fed. Cas. No. 16,804, by Benedict, J. These authorities were cited by Judge Coxe in The M. J. Cummings (D. C.) 18 Fed. 178, 184. The towing must be regarded as having been particularly hazardous in this case on account of the construction of the boat. The precaution taken of putting her astern was not sufficient on account of her width being greater than the tug's. It was perfectly obvious that she would have to be towed through heavy ice in the beginning of the voyage and there was a strong probability of danger.

The last time I had occasion to consider the liability of a tug for the results of injuries to her tow from ice was in Burke v. Tugs R. G. Townsend and S. L. Crosby (decided June 6, 1905) 140 Fed. 217. The tugs there were held solely liable for injuries to a blunt-bowed stemless boat towed alongside, against the wishes of the master, who said his boat was unfit to encounter ice and only consented to be taken upon assurance from the tug of there being no danger.

Here it seems to be clear that the boat participated in the negligence. It is said by the master that he did not consent to be towed and warned the tug of the danger but this contention has not been satisfactorily sustained. The tug's master denies that any such conversation took place and it seems probable that those interested in the barge were quite willing that she should be subjected to such risk as existed. The libelant was the owner of the cargo and needed it at Staten Island. Its representative at Hempstead stood by when the towing arrangements were being made and acquiesced in the starting.

Decree for the libelant for half damages, with an order of reference.