## THE PALLAS.

(District Court, D. Massachusetts. February 3, 1920.)

No. 1630.

1. **Towage ☞11(1)—Tug bound to exercise care to avoid danger from ice.**
   Dangers to a towed vessel from ice are regarded like other dangers to navigation, and the tug is bound to exercise due care to avoid injury to the tow therefrom.

2. **Towage ☞12(2)—Direction of dangerous course by tow defeats recovery, and assent limits recovery.**
   If the tow directs a dangerous course or movement, she cannot recover; while, if she assents with knowledge of the danger, and is injured, the damages are divided, on the theory that the resulting accident was caused by the fault of both vessels.

3. **Towage ☞11(1)—Tug responsible for accident from faulty navigation or attempt to do something dangerous.**
   If an accident to a barge under the control of a tug was the result either of faulty navigation or of an attempt to do something inherently dangerous, the tug was to blame.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Towage ⬅══11(2)—Where barge under charter to owner of tug owner and master of barge held not at fault.**

Where a barge was under a day by day charter to the same company that owned a tug, and her movements were entirely under the control of the charterer, though her master was appointed and paid by her owner, and the crew was hired and discharged by him, the owner *held* not chargeable with the master's failure to forbid the movement of the barge stern foremost through a channel full of floating ice, and the master not negligent in failing to apply preventers to protect the rudder on his own motion.

**5. Towage ⬅══11(1)—Tug at fault in towing barge through channel filled with ice in manner adopted.**

A tug *held* at fault in attempting to tow a barge stern foremost through a channel filled with floating ice, with the two vessels fastened together, so that the stern of the barge projected ahead of the tug, instead of breaking the ice and turning the barge, or sending another tug ahead to push the ice out of the path of the barge's rudder.

In Admiralty. Suit by the Northern Transportation Company against the steam tug Pallas. Decree for libelant.

Frederick Foster, of Boston, Mass., for libelant.

Gaston, Snow & Saltonstall and Thomas Hunt, all of Boston, Mass., for respondent.

MORTON, District Judge. [1, 2] Dangers to a towed vessel from ice are regarded like other dangers to navigation—e. g., shoal water, impending storm, etc. The tug is bound to exercise due care to avoid injury to her charge from them. Monk v. Cornell Steamboat Co., 198 Fed. 472, 117 C. C. A. 232; The Phœnix (D. C.) 143 Fed. 350. If the tow directs the dangerous course or movement she cannot recover. The Packer (C. C.) 28 Fed. 156. If she assents, with knowledge of the dangers, and is injured, damages are divided, upon the theory that the resulting accident was caused by the fault of both vessels. The Phœnix, supra.

[3] In this case the barge was wholly under the control of the tug, no unexpected difficulties were encountered, and during the movement the barge was seriously injured. Evidently the accident was the result either of faulty navigation or of an attempt to do something inherently dangerous, in which cases the tug was to blame, or of a failure by the barge to take proper precautions for her own safety.

The channel which had been broken out from the dock was narrow, and was filled with heavy floating ice. To move a light barge, whose rudder, being only slightly submerged, had little support from the water against sudden shocks, stern foremost through such a channel, was, it seems to me, an obviously dangerous undertaking; and the risk was increased by the manner in which the two vessels were fastened together, the stern of the barge projecting far ahead of the tug, and therefore meeting ice which had not been moved by the tug.

The danger was recognized by the tug. There is testimony from her captain and mate that the barge was directed to rig preventive tackles to steady and support her rudder, and failed to do so. The master of the tug testified on direct examination:

(265 F.)

"Q. State, as well as you can remember it, what that conversation was; stating in substance what you said and what he said. A. Well, I simply told him to make his tiller fast, and we would tow her down stern first; that the ice was so thick it was impossible to turn her; that, if I were to try to turn her out there, it meant disaster. And as I understood his conversation, he said; 'All right; you are the doctor.' And so I made fast, and I asked him if his tiller was secured, and he said, 'Yes.' So we started along. Q. May I refresh your recollection by asking you if the word 'preventer' was used in that conversation? A. I told him to put the preventers on his tiller. Q. Was the word 'preventer' used, as you remember it? A. Yes, sure; because that is what I always use when I am towing a thing stern first."

The master of the barge denies that anything was said to him about putting on preventers. On all the evidence I am not satisfied that it was.

[4] The barge was under a day by day charter to the same company that owned the tug. Her movements were entirely under the control of the charterer. Her master was appointed and paid by her owner, and he hired and discharged his crew. The facts are very similar to those in Monk v. Cornell S. S. Co., supra, in which it was held that the charterer was the owner pro hac vice, and that the effect of the arrangement was "a demise of the boat"; i. e., the charterers had the right to control her movements. It does not seem to me that her owners are chargeable with Bradley's failure to forbid the proposed movement, even if he had the power to forbid it and was negligent for not doing so, as to both of which questions I should have serious doubt, nor that Bradley was negligent in not applying preventers on his own motion. I am not satisfied that the accident was due to the lack of them. Bradley apparently regarded the undertaking as dangerous and expressed himself to that effect, although in no insistent way, to the master of the tug, receiving the answer that the berth was needed for another vessel and the barge must be moved. According to the tug's evidence, Bradley finally said to her captain, "All right, you are the doctor"—meaning, as I take it, that he put the responsibility for the movement on him.

[5] The only faults alleged in the libel which have been supported by evidence are based on the tug's failure to turn the barge around. I am not satisfied that there was enough open water near the dock to have done that safely, without first breaking up some of the heavy ice.

The tug's fault, as I view it, was in undertaking a movement obviously dangerous to the barge without adopting practical precautions, such as having another tug go ahead to push the heavy floating ice out of the path of the barge's rudder, or breaking the ice and turning her. The libel may need amendment.

Decree for the libelant for full damages.