## THE JERRY T.

## THE PERTH AMBOY NO. 2.

### M. & J. TRACY, Inc., v. TICE TOWING LINE, Inc.

### LEHIGH NAV. COAL CO. v. SAME.

### Nos. 15115, 15025.

District Court, E. D. New York.

June 17, 1937.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for libelant M. & J. Tracy, Inc.

Earl Appleman, of New York City, for libelant Lehigh Nav. Coal Co.

Lynch, Hagen & Atkins, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for respondents, the Perth Amboy No. 2 and Tice Towing Line, Inc.

CAMPBELL, District Judge.

By stipulation, the two entitled suits above, were tried together.

These suits are brought to recover damages to the barge Jerry T. and her cargo, by the alleged negligence of tug Perth Amboy No. 2 and her owner, operator, and/or charterer, Tice Towing Line, Inc.

At all the times hereinafter mentioned, M. & J. Tracy, Inc., the libelant in the first above entitled suit, was a domestic corporation, organized and existing under and by virtue of the laws of the State of New York.

At all the times hereinafter mentioned, the said libelant M. & J. Tracy, Inc., was the owner of the barge Jerry T., which, up to the time of the happening of the events hereinafter mentioned, was tight, staunch, strong, and in all respects properly manned and equipped, and William P. Gillis was bargee of the said barge.

At all the times hereinafter mentioned, and at the time of the trial, Lehigh Navigation Coal Company, the libelant in the second above-entitled suit, was a corporation, organized and existing under the laws of the State of Pennsylvania, with an office at 143 Liberty street, borough of Manhattan, city of New York.

The tug Perth Amboy No. 2 was, during the currency of process hereunder, within this district and within the jurisdiction of this court.

At all the times hereinafter mentioned, and at the time of the trial, Tice Towing Line, Inc., the respondent in both suits, was a domestic corporation, having a place for the transaction of business at No. 17 Battery place, borough of Manhattan, city, county, and State of New York.

At all the times hereinafter mentioned, the respondent Tice Towing Line, Inc., was the owner, operator and/or charterer of the tug Perth Amboy No. 2.

On or about, or prior to, the 15th day of February, 1936, the libelant Lehigh Navigation Coal Company entered into an agreement with M. & J. Tracy, Inc., the owner of the barge Jerry T. to carry certain anthracite coal from Perth Amboy, N. J., to New York City; but a specific day and hour therefor was not fixed.

The libelant Lehigh Navigation Coal Company arranged for the loading of the coal with Perth Amboy Coal Dock.

On or about the 15th day of February, 1936, there was loaded on said Barge Jerry T. 611.45 tons of anthracite coal, the property of Lehigh Navigation Coal Company, to be carried to Ninety-Sixth street, borough of Manhattan, New York City. The carrying capacity of the Jerry T. was 850 tons.

The tow consisted of thirteen boats made up in four tiers of three boats abreast, with a single boat in the fifth tier. The tow was properly made up with the barge Jerry T. as the starboard hawser boat. The Lehigh Navigation Coal Company did not arrange with Tice Towing Line, Inc., for the towing of the barge Jerry T., but made all arrangements for the movement of the coal with the coal agent's office of the Lehigh Valley Railroad Company, to whom it gave the destination, Ninety-Sixth street, New York City, at the time it gave the instructions to load the coal.

On February 15, 1936, the tug Perth Amboy No. 2 took a light tow from Elizabethport to Perth Amboy, where she arrived around half past 4 o'clock in the afternoon. After landing her light tow, the Perth Amboy No. 2 received a towing ticket from Lehigh Valley Coal Dock Office, showing the boats she was to take in tow. The tow was partly made up, and the Perth Amboy No. 2 added some boats making the number in tow 13, arranged as aforesaid. The Perth Amboy No. 2 finished making up her tow about 6 o'clock p. m., and left the Lehigh Valley Coal Dock with her tow about 7 o'clock p. m., with the Jerry T. as the starboard hawser boat. No objection was made by the captain of the Jerry T. or any one acting on her behalf to being towed, nor was any complaint made by them, or either of them, with reference to ice conditions.

On her way from Elizabethport to Perth Amboy, that day, no ice was observed by the Perth Amboy No. 2 in the channel, but some was observed along the shore.

There were no signs of ice at Perth Amboy. There had been considerable ice in the Kills during the first half of February, especially in the vicinity of Sewaren.

The Perth Amboy No. 2 had no helper tug, but one was to join her somewhere before reaching the B. & O. Bridge. The purpose of the helper tug was to guide the tow through the bridge. It was not customary for tows of that size to have helper tugs from Perth Amboy. With her tow on thirty-fathom hawsers, the Perth Amboy No. 2, bucking the tide, proceeded without incident, about one mile and a half to the vicinity of Sewaren.

No efficient lookout was maintained on the Perth Amboy No. 2, as her deck hand or deck hands were engaged in shoveling coal. When about 200 or 300 feet above the Bug Light, the master of the tug Perth Amboy No. 2 observed, about 400 feet ahead, flat dark ice coming from Story's Flats across the Kills toward the New Jersey shore. There were vessels anchored upon Story's Flats, and the ice seemed to come from behind them. The Perth Amboy No. 2 reduced her speed to one-half speed, and altered her course from the center of the channel, over toward the New Jersey shore.

The Perth Amboy No. 2 continued on with her tow, at half speed, and fetched up in the ice. The tow was coming on, and in order to escape contact with the tow, the Perth Amboy No. 2 hooked up her engines and put her wheel hard astarboard to let the tow clear the tug. The Perth Amboy No. 2 blew to her tow to throw off the hawsers.

The port hawser boat threw off her hawser, but the captain of the Jerry T. did not throw off her hawser, and the tow continued on, and the Jerry T. fetched up

against the ice, and the A. D. Naylor, the boat astern, came into sharp contact with the stern of the Jerry T., thus inflicting severe damage.

When the barge Jerry T. came into contact with the ice, certain planks on the starboard bow of the barge were broken, and the barge Jerry T. sank within a few minutes. The Jerry T. asked the Perth Amboy No. 2 for assistance, but due to the fact that she was taking in her port hawser, and was unable to take in her starboard hawser, which the captain had failed to throw off, the Jerry T., and which the Perth Amboy No. 2 was compelled to break, the Perth Amboy No. 2 could not render any assistance.

Due, however, to the size of the opening in the broken planks at the bow, so much water was coming into the Jerry T. that the siphon of the Perth Amboy No. 2, even if it could have been connected up before the Jerry T. sank, could not have kept her afloat, as too much water was coming in. The cargo of the Jerry T. and the Jerry T. were damaged, and the captain of the Jerry T. suffered the loss of most of his personal effects.

The tow was properly made up, and the towing on hawsers of 30 or 40 fathoms was not improper.

The tug was not at fault in starting with her tow from Perth Amboy, as there were no signs of ice there at that time, and those on the Perth Amboy No. 2 had seen no signs of ice in the channel coming to Perth Amboy that day.

■ The tug and its owners, and the owners of the Jerry T. and her cargo, knew that severe winter weather prevailed at the time, and that for some time previous there had been heavy ice on both banks of the Kills, and the towing was ordered by the agent of the owner of the cargo. The barge captain, as agent of the owner, operator and/or charterer, took the risk of towing through ice, and the tug, and the owner, operator and/or charterer thereof were liable only for negligence. Monk v. Cornell Steamboat Co. (C.C.A.) 198 F. 472; The Packer (C.C.) 28 F. 156; The W. H. Baldwin (C.C.A.) 271 F. 411.

The Perth Amboy No. 2 could not have prevented the sinking of the Jerry T., even if the hawsers had both been at once thrown off, and her siphon had been connected up, as it would have been impossible to keep her afloat or to beach her on either the New Jersey or Staten Island shores on account of ice.

The cases cited where the barge was towed alongside are not in point. There was no need to have more than one tug ahead of the tow, as the tug was not forcing the tow through the ice.

■ It was a fault on the part of the Perth Amboy No. 2 not to maintain an efficient lookout, and I cannot say that such failure did not contribute to the damage to the barge and cargo.

The evidence is conflicting as to whether the Perth Amboy No. 2 had one or two deck hands, and if she had but one, she was undermanned; but I believe she had two.

When the master of the Perth Amboy No. 2 observed the ice crossing the channel and closing it, the tug was 400 feet distant from the ice, and the tow 580 feet distant from the ice, and the engines of the tug were hooked up. Under these conditions the Perth Amboy No. 2 should have stopped her engines, not merely slowed them down, and taken the way off the tow. The master's excuse that stopping his engines would cause the tug to get out of position is not supported by the surrounding circumstances, as that is what the Baltimore did, and she was astern of the tow of the Perth Amboy No. 2, and the Baltimore had a tow of 18 boats. Furthermore, the Perth Amboy No. 2 could have maintained her position by merely kicking ahead. With slack hawsers, the Perth Amboy No. 2 could have attempted to go through the ice without damaging the tow.

■ It was common knowledge that the place where ice was to be expected, was in the vicinity of Sewaren, and the master of the Perth Amboy No. 2 should have had his tow under control at that point, instead of which, from hooked up, he reduced to half speed, which undoubtedly did not take effect at once, ran his tug into the ice, with force enough to be caught in the ice, and then, to save the tug, swung her stern away and allowed the Jerry T. to bring her starboard bow into contact with the ice, with such force that planks were broken and holed, so that before the Perth Amboy No. 2 could render any assistance, the Jerry T. with her cargo sank. This constituted negligence for which the Perth Amboy No. 2 and Tice Towing Line, Inc., are liable to the libelant in each of the above entitled suits.

350

The attempt of the captain of the Perth Amboy No. 2 to force the tug through the ice was not an act in extremis, but one that could have been avoided and the way taken off the tow.

A decree may be entered in favor of the libelant in each of the above-entitled suits against tug Perth Amboy No. 2 and Tice Towing Line, Inc., with costs, and the usual order of reference.

Settle decrees on notice.